U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2018 SEP 20 AM 11: 53

CLERK
BY
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

WERNER KARL HEGEMANN, )
 )
　　Plaintiff, )
 )
　　v. ) Case No. 2:18-cv-00064
 )
M & M AMERICAN, INC., )
 )
　　Defendant. )

## OPINION AND ORDER TRANSFERRING CASE
## TO NORTHERN DISTRICT OF TEXAS, AMARILLO DIVISION

Plaintiff Werner Karl Hegemann brings this negligence action against Defendant M & M American, Inc. after Plaintiff was injured in an automobile accident in Texas when his vehicle was struck by a tractor trailer owned or leased by Defendant and operated by an individual who is not named as a defendant. Pending before the court is Defendant's motion to dismiss Plaintiff's claims for lack of personal jurisdiction and improper venue pursuant to Fed. R. Civ. P. 12(b)(2) and (3). (Doc. 3.) On August 30, 2018, the court heard oral argument on the motion. On September 4, 2018, Defendant consented to transfer of venue in this matter to the United States District Court for the Northern District of Texas, Amarillo Division.

Plaintiff is represented by Richard K. Bowen, Esq. Defendant is represented by Shapleigh Smith, Jr., Esq.

### I. Factual Background.

The facts are derived from Plaintiff's Complaint. Plaintiff Werner Karl Hegemann resides in Putney, Vermont. Defendant M & M American, Inc. is a trucking company with a principal place of business in Mason, Ohio. Plaintiff's Complaint does not identify Defendant's state of incorporation. Plaintiff alleges, upon information and belief, that Defendant conducts business throughout the United States, Canada, and

Mexico and is licensed with the Department of Transportation to do business in all forty-eight contiguous states. Defendant has a registered agent in the State of Vermont. Asserting that this is an action between citizens of different states and that damages exceed the amount-in-controversy requirement, Plaintiff claims that this court has subject matter jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a).

On or about April 24, 2016, Plaintiff was traveling eastbound in his 1994 GMC Sierra pickup truck on "IH 40 in Oldham County, Texas[]" when his vehicle was struck by a 2009 White International tractor-trailer truck owned or leased by Defendant and operated by Ratavius D. Buchanan. (Doc. 1 at 2, ¶ 10.) The collision caused Plaintiff's truck to flip over, resulting in "serious bodily injuries to its occupants." *Id.* at 3, ¶ 13.

A police officer responding to the accident issued Mr. Buchanan a ticket for failing to control the speed of the tractor-trailer. Mr. Buchanan had an unauthorized passenger in the cab of the tractor-trailer and was purportedly distracted by the unauthorized visitor when the accident occurred. Plaintiff was transported from the scene and admitted to Northwest Texas Hospital. Based on these allegations, Plaintiff asserts claims of negligence, respondeat superior, and negligent hire and supervision.

Defendant submitted an affidavit from its President, Brian West, which describes Defendant's business as a for-hire, transportation company primarily serving the Midwestern and Southern United States. Mr. West avers that Defendant is incorporated and has its principal place of business in Ohio and is not registered with Vermont's Secretary of State to do business in Vermont, does not have any offices, employees, or bank accounts in Vermont, and does not own or lease any property in the state.

Mr. West avers that, since 2014, Defendant has not had any Vermont-based clients and, as a result, earned no revenue in Vermont. "Since 2014, the number of deliveries/pick-ups that [Defendant] has made in Vermont on an annual basis represents .07% or less than the total number of deliveries/pick-ups made by [Defendant][.]" (Doc. 3-1 at 2, ¶ 7.)

Mr. West further describes Defendant's obligations under the federal Motor Carrier Act, which provides that a motor carrier must designate an agent upon whom

2

service of process may be made in each state in which the carrier operates. To that end, Defendant has "made arrangements with Process Agent Service Company, Inc. to make a 'blanket designation.'" *Id.* at 2, ¶ 9. According to Mr. West, Process Service Company maintains a list on file with the federal Motor Carrier Safety Administration that identifies a process agent for each of the fifty states. "Because [Defendant] made a blanket designation, it has designated all of the people identified on that list as its process agents." *Id.*

## II. Conclusions of Law and Analysis.

### A. Standard of Review.

"In the absence of a federal statute specifically directing otherwise, and subject to limitations imposed by the United States Constitution, [the court] look[s] to the law of the forum state to determine whether a federal district court has personal jurisdiction over a foreign corporation." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016) (citing Fed. R. Civ. P. 4(k)(1)(A)). "On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).

"In evaluating whether the requisite showing has been made, [the court] construe[s] the pleadings and any supporting materials in the light most favorable to the plaintiffs." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013). "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012). "If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (internal quotation marks omitted).

As the Second Circuit has explained:

[I]n resolving questions of personal jurisdiction in a diversity action, a district court must conduct a two-part inquiry. First, it must determine

3

whether the plaintiff has shown that the defendant is amenable to service of
process under the forum state's laws; and second, it must assess whether
the court's assertion of jurisdiction under these laws comports with the
requirements of due process.

*Ehrenfeld v. Mahfouz*, 489 F.3d 542, 547 (2d Cir. 2007) (internal quotation marks omitted) (quoting *Metro. Life Ins. Co.*, 84 F.3d at 567).

In Vermont, state courts may exercise personal jurisdiction over a non-resident defendant "to the full extent permitted by the . . . Due Process Clause" of the Fourteenth Amendment. *State v. Atl. Richfield Co.*, 2016 VT 22, ¶ 10, 201 Vt. 342, 349, 142 A.3d 215, 220 (internal quotation marks omitted); *see also In re Roman Catholic Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 38 (2d Cir. 2014) ("Vermont's long-arm statute . . . reflects a clear policy to assert jurisdiction over individual defendants to the full extent permitted by the Due Process Clause.") (internal citation, footnote, and quotation marks omitted). As a result, "the first part of [the] inquiry—the interpretation of the Vermont law governing service of process—merges with the second part of the jurisdictional test: whether the court's exercise of personal jurisdiction over the defendant satisfies the requirements of due process." *Metro. Life Ins. Co.*, 84 F.3d at 567. This "analysis consist[s] of two components: the 'minimum contacts' test and the 'reasonableness' inquiry." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002); *see also N. Aircraft, Inc. v. Reed*, 572 A.2d 1382, 1386 (Vt. 1990) (providing that "once the court determines that a nonresident defendant has purposefully established minimum contacts within the forum State, . . . several factors must be considered to ensure that exercising personal jurisdiction over the defendant is reasonable") (citation and internal quotation marks omitted).

"To determine whether a defendant has the necessary 'minimum contacts,' a distinction is made between 'specific' and 'general' personal jurisdiction." *In re Terrorist Attacks*, 714 F.3d at 673. Specific jurisdiction "exists when a forum exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum[.]" *Id.* at 673-74 (alteration and internal quotation marks omitted). In contrast, general jurisdiction "is based on the defendant's general business

4

contacts with the forum and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts." *Id.* at 674 (alteration and internal quotation marks omitted). "A court deciding whether it has jurisdiction over an out-of-state defendant under the Due Process Clause must evaluate the 'quality and nature[]' . . . of the defendant's contacts with the forum state under a totality of the circumstances test[.]" *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

## B. Whether General Jurisdiction Exists.

Plaintiff asserts that this court has jurisdiction over Defendant "by reason of its business activities" as it provides services throughout the United States, Canada, and Mexico, is licensed with the Department of Transportation in all forty-eight contiguous states, and has a registered agent in Vermont. (Doc. 1 at 2, ¶ 5.) In his opposition brief, he further claims that Defendant advertises to Vermont companies, its employees use Interstate 89 and Interstate 91 in Vermont, purchase gas in the state, and make use of accommodations while in Vermont.[1] Based on the uncontroverted allegations set forth in Mr. West's declaration, Defendant responds that its limited contacts with Vermont do not permit the exercise of general jurisdiction over it.

A corporation is subject to general jurisdiction in a forum when "'the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)). "[T]he general jurisdiction inquiry 'is not whether a foreign corporation's in-forum contacts can be said to be in some sense continuous and systematic,'" but rather "'whether that corporation's affiliations with the State are *so* continuous and systematic *as to render it essentially at*

---

[1] Because these assertions do not appear in his Complaint or in an affidavit or declaration, they are not properly before the court. Even if they are considered, these allegations do not change the personal jurisdiction analysis.

5

*home* in the forum.'" *Brown*, 814 F.3d at 627 (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014)).

"With respect to a corporation, the place of incorporation and principal place of business are paradigm bases . . . for general jurisdiction." *Daimler*, 134 S. Ct. at 760 (alteration and internal quotation marks omitted). A corporation's principal place of business is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). "In practice, this should normally be the place where the corporation maintains its headquarters— provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the 'nerve center.'[]" *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 218 (2d Cir. 2016) (citing *Hertz*, 559 U.S. at 93) (internal quotation marks omitted).

As the Second Circuit recently observed:

> [I]n assessing the extent of a corporation's contacts in a state for general jurisdiction purposes, we must assess the company's local activity not in isolation, but *in the context of the company's overall activity*: the general jurisdiction inquiry "does not focus solely on the magnitude of the defendant's in-state contacts," but "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide."

*Brown*, 814 F.3d at 629 (quoting *Daimler*, 134 S. Ct. at 762 n.20). "Only in the 'exceptional' case will another jurisdiction be entitled to exercise such sweeping powers as the use of its adjudicatory authority to decide matters unrelated to its citizens or to affairs within its borders." *Id.* at 627 (quoting *Daimler*, 134 S. Ct. at 761 n.19).[2]

---

[2] The *Daimler* Court recognized *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952) as an example of an "exceptional case" in which a corporation was subject to general jurisdiction in a forum other than its state of incorporation or principal place of business. In *Perkins*, the defendant was incorporated under the laws of the Philippines where it operated gold and silver mines. During the Japanese occupation of the Philippines during World War II, the defendant ceased its mining operations there, and its president moved to Ohio, "where he kept an office, maintained the company's files and oversaw the company's activities." *Daimler*, 134 S. Ct. at 756. The *Perkins* Court held that Ohio courts could exercise general jurisdiction over the defendant without offending due process because "Ohio was the corporation's principal, if temporary, place of business." *Id.* (internal quotation marks omitted).

6

Neither of the "paradigm bases" of general jurisdiction exist here because there is no dispute that Defendant is incorporated and has its principal place of business in Ohio. *Daimler*, 134 S. Ct. at 760 (alteration and internal quotation marks omitted). The court therefore may only exercise general jurisdiction over Defendant if this is an "exceptional" case. *See Brown*, 814 F.3d at 627 (holding that "except in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business").

In *Brown*, the Second Circuit found defendant Lockheed Martin's contacts with the forum of Connecticut were insufficient under *Daimler* to permit the exercise of general jurisdiction. Lockheed had a physical presence in Connecticut for over three decades and had obtained and maintained a certificate to do business in that state. It employed between approximately thirty to seventy workers in Connecticut from 2008 through 2012, derived approximately $160 million in revenue for its Connecticut-based activities, and paid Connecticut taxes on that revenue. The Second Circuit explained that "Lockheed's business in Connecticut, while not insubstantial, constitute[d] only a very small part of its portfolio[;]" that, "in each of the years from 2008 through 2012, when suit was filed, its Connecticut-based employees represented less than 0.05% of Lockheed's full workforce[;]" and that the "$160 million in gross revenue that Lockheed derived from its Connecticut operations over five years never exceeded 0.107% of the company's total annual revenue." *Id.* at 629. As a result, the Second Circuit held that "Lockheed's contacts with Connecticut fall far short of the relationship that Due Process requires, under *Daimler* and *Goodyear*, to permit the exercise of general jurisdiction over Lockheed by Connecticut courts." *Id.* at 630.

In this case, Defendant's contacts with Vermont are nominal to nonexistent in comparison to Lockheed's contacts with Connecticut. Since 2014, Defendant's deliveries and pick-ups make up 0.07% or less of its total number of deliveries or pick-ups. Defendant is not registered to do business in Vermont. It does not have any offices, employees, or bank accounts in Vermont and does not lease or own any property here. Without any Vermont-based clients, Defendant has not earned any revenue in Vermont.

7

Defendant's nominal to nonexistent business activities in the State of Vermont do not subject it to general jurisdiction here.

### C. Whether Defendant Consented to General Jurisdiction in Vermont.

Because personal jurisdiction "is a waivable right, there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court." *Burger King*, 471 U.S. 462 at 473 n.14 (internal quotation marks omitted). Plaintiff argues that Defendant has consented to general jurisdiction through its appointment of a registered agent in Vermont pursuant to the Motor Carrier Act, 49 U.S.C. § 13304(a). Relying on the Second Circuit's decision in *Brown*, Defendant counters that a motor carrier does not consent to general jurisdiction in every state in which it designates a registered agent and that Plaintiff's broad interpretation of the Motor Carrier Act would violate Due Process.

Section 13304(a) of the Motor Carrier Act governs the designation of an agent for service of process and provides that:

> A motor carrier or broker providing transportation subject to jurisdiction under chapter 135, . . . shall designate an agent in each State in which it operates by name and post office address on whom process issued by a court with subject matter jurisdiction may be served in an action brought against that carrier or broker.

49 U.S.C. § 13304(a). The phrase "jurisdiction under chapter 135" "generally refers to the jurisdiction of the Secretary of the Department of Transportation and the Surface Transportation Board[] . . . over the interstate transportation by motor carrier and the procurement of that transportation." *W. Express, Inc. v. Villanueva*, 2017 WL 4785831, at *5 n.4 (M.D. Tenn. Oct. 24, 2017) (citing 49 U.S.C. §§ 13102(1), (2)) (internal quotation marks omitted).

In *Brown*, the Second Circuit held that the Connecticut business registration statute, which required foreign corporations transacting business in Connecticut to maintain a registered agent in the state, did not constitute consent to general jurisdiction in Connecticut. The *Brown* court reasoned that the statute did not "expressly provide[] that foreign corporations that register to transact business in the state shall be subject to

8

the 'general jurisdiction' of the Connecticut courts or direct[] that Connecticut courts may exercise their power over registered corporations on any cause asserted by any person." *Brown*, 814 F.3d at 634. In light of the "essentially at home" test announced by the Supreme Court in *Goodyear* and *Daimler*, the Second Circuit found that "federal due process rights likely constrain an interpretation that transforms a run-of-the-mill registration and appointment statute into a corporate 'consent'—perhaps unwitting—to the exercise of general jurisdiction by state courts, particularly in circumstances where the state's interests seem limited." *Id.* at 637. The Second Circuit further observed:

> If mere registration and the accompanying appointment of an in-state agent—without an express consent to general jurisdiction—nonetheless sufficed to confer general jurisdiction by implicit consent, every corporation would be subject to general jurisdiction in every state in which it registered, and *Daimler*'s ruling would be robbed of meaning by a back-door thief.

*Id.* at 640.

Consistent with *Brown*, the majority of Circuit Courts of Appeals have concluded that appointing a registered agent is insufficient to establish general jurisdiction over a corporation.[3] Although *Brown* interpreted a state statute, its reasoning applies to the federal Motor Carrier Act as well because it does not "expressly provide" that corporations who register to transact business in a state and appoint a registered agent thereby consent to general jurisdiction.

In contrast, the Eighth Circuit in *Ocepek v. Corp. Transp., Inc.*, 950 F.2d 556 (8th Cir. 1991) squarely considered the Motor Carrier Act's designation of an agent provision

---

[3] *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000) (rejecting personal jurisdiction over a corporation based on the corporation's appointment of agent for service of process, because "casual presence of a corporate agent in the forum is not enough to subject the corporation to suit where the cause of action is unrelated to the agent's activities"); *Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 183 (5th Cir. 1992) ("To assert, as plaintiffs do, that mere service on a corporate agent automatically confers *general jurisdiction* displays a fundamental misconception of corporate jurisdictional principles."); *Ratliff v. Cooper Labs., Inc.*, 444 F.2d 745, 748 (4th Cir. 1971) ("Applying for the privilege of doing business is one thing, but the actual exercise of that privilege is quite another. . . . The principles of due process require a firmer foundation than mere compliance with state domestication statutes.") (citation omitted).

9

and held that the defendant consented to personal jurisdiction. The *Ocepek* court looked to Congress's intended purpose in passing the Motor Carrier Act, noting that "[o]ne of the goals of the [statute] was to protect citizens of the United States from injury resulting from the actions of interstate carriers." *Id.* at 559. Consistent with that purpose, the Eighth Circuit interpreted the statute and corresponding regulations, which "say nothing about limited designations," and found that "this silence reflects that no such limitations were contemplated by the drafters." *Id.* at 560.

*Ocepeck* is non-binding precedent that pre-dates and is arguably inconsistent with *Daimler*. More critically, its reasoning is inconsistent with *Brown*, which concluded that a registration statute's silence did not "expressly provide" for the exercise of general jurisdiction. *Brown*, 814 F.3d at 634; *see also Davis v. Quality Carriers, Inc.*, 2009 WL 1291985 at *5 (D.N.J. May 7, 2009) ("Nothing in the language of [the Motor Carrier Act] or the applicable [Department of Transportation] regulations even suggests that a motor carrier or other covered entity submits to the jurisdiction of each state in which it designates an agent for service of process.").

The only case cited by Plaintiff that post-dates *Daimler* is *Grubb v. Day to Day Logistics, Inc.*, 2015 WL 4068742 (S.D. Ohio July 2, 2015). There, the court found that the defendant had consented to be sued for an out-of-state automobile accident because it designated an agent pursuant to the Motor Carrier Act. In doing so, it relied on Sixth Circuit precedent, *Shapiro v. Southeastern Greyhound Lines*, 155 F.2d 135 (6th Cir. 1946), which does not address issues of personal jurisdiction.[4] The court found that *Shapiro* was "unaffected by *Daimler*[,]" which generally limits general jurisdiction over a corporation to its state of incorporation and principal place of business, but did not address when a corporation consents to personal jurisdiction. *Grubb*, 2015 WL 4068742, at *4. This court, by contrast, is bound by the Second Circuit's decision in *Brown*, which

---

[4] *Shapiro*, instead, addressed a district court order "quashing service of summons on the ground that the venue of the cause of action is improperly laid in the district." *Shapiro v. Se. Greyhound Lines*, 155 F.2d 135, 136 (6th Cir. 1946). Thus, "[t]he exercise of personal jurisdiction was not in question [in *Shapiro*]." *W. Express, Inc. v. Villanueva*, 2017 WL 4785831, at *6 (M.D. Tenn. Oct. 24, 2017).

10

held that the "mere registration and the accompanying appointment of an in-state agent—without an express consent to general jurisdiction" does not constitute consent to personal jurisdiction. *Brown*, 814 F.3d at 640.

Because Defendant's designation of a registered agent pursuant to the Motor Carrier Act does not constitute consent to be sued in Vermont, Plaintiff has not met his burden to demonstrate that general jurisdiction exists.

### D.     Whether Specific Jurisdiction Exists.

Defendant further argues that specific jurisdiction is lacking because none of Plaintiff's claims arise out of any of its contacts with Vermont but rather relate to an automobile accident that occurred in Texas. Plaintiff responds that Defendant has sufficient contacts with the forum to satisfy Vermont's long-arm statute and that his claims have a relationship to Defendant's contacts in Vermont.

"[A] State may authorize its courts to exercise [specific] personal jurisdiction over an out-of-state defendant if the defendant has 'certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Goodyear*, 564 U.S. at 923 (alteration in original) (quoting *Int'l Shoe*, 326 U.S. at 316). "For the purpose of establishing specific personal jurisdiction, the necessary fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *In re Terrorist Attacks*, 714 F.3d at 674 (internal quotation marks omitted); *see also Bristol-Myers Squibb Co. v. Super. Ct. of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017) (stating that "there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.") (internal quotation marks and alteration omitted).

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (internal quotation marks omitted). In order for the court to exercise "case-linked" or specific jurisdiction, "the suit

11

must arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers Squibb*, 137 S. Ct. at 1780 (emphasis, internal quotation marks, and alterations omitted). There must be "'some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Goodyear*, 564 U.S. at 924 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 134 S. Ct. at 1122. "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb*, 137 S. Ct. at 1781.

Here, none of the claims raised in Plaintiff's Complaint arise out of Defendant's contacts with Vermont. Instead, they arise out of a motor vehicle accident that took place in Texas between a Vermont driver and Mr. Buchanan who is from another state. The accident was investigated by Texas law enforcement and Plaintiff was treated and released from a Texas hospital. Plaintiff has thus neither established that Defendant has sufficient minimum contacts for specific jurisdiction nor established that his suit is related to those contacts. As a result, no further analysis of specific jurisdiction is warranted. *See Metro. Life Ins. Co.*, 84 F.3d at 568 ("A reviewing court must first examine the defendant's contacts with the forum. If the same do not exist in sufficient abundance, that is, if the constitutionally necessary first-tier minimum is lacking, the inquiry ends.") (internal quotation marks omitted).

Because Plaintiff has not met his burden to establish either general or specific jurisdiction exists at the pleading stage, Defendant's motion to dismiss for lack of personal jurisdiction is GRANTED.[5]

### E. Whether the Court Should Permit Jurisdictional Discovery.

Without expressly requesting jurisdictional discovery, Plaintiff notes that this court can exercise its discretion to permit jurisdictional discovery and conduct an

---

[5] For this reason, the court does not and need not address Defendant's motion to dismiss based on improper venue.

12

evidentiary hearing. "A district court is 'typically within its discretion' to order jurisdictional discovery where a plaintiff has 'made out a prima facie case for jurisdiction.'" *Funk v. Belneftekhim*, 861 F.3d 354, 366 (2d Cir. 2017) (quoting *Frontera Res. Azer. Corp. v. State Oil Co. of the Azer. Republic*, 582 F.3d 393, 401 (2d Cir. 2009)). In this case, that threshold requirement has not been satisfied. In addition, Plaintiff has not identified discovery that may enable him to satisfy the requirements for personal jurisdiction over Defendant.

## F. Whether the Court Should Transfer this Case.

28 U.S.C. § 1404 states that: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Texas*, 571 U.S. 49, 60 (2013). It "reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (footnote omitted).

As the Supreme Court has observed, § 1404 "was designed as a federal housekeeping measure, allowing easy change of venue within a unified federal system." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981) (internal quotation marks omitted). Therefore, "[d]istrict courts [are] given more discretion to transfer under § 1404(a) than they [have] to dismiss on grounds of *forum non conveniens*[,]" *id.* at 253, and "motions for transfer . . . are determined upon notions of convenience and fairness on a case-by-case basis." *Cuyahoga Equip. Corp. v. United States (In re: Cuyahoga Equip. Corp.)*, 980 F.2d 110, 117 (2d Cir. 1992) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

13

"[A] district court considering a § 1404(a) motion . . . must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine*, 571 U.S. at 62.

> Factors relating to the parties' private interests include relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. Public-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law. The [c]ourt must also give some weight to the plaintiff['s] choice of forum.

*Id.* at 62 n.6 (internal citations, alterations, and quotation marks omitted).[6] It is the moving party's burden to prove by clear and convincing evidence that a transfer is proper under § 1404(a). *See N.Y. Marine & Gen. Ins. Co. v. Lafarge N.A., Inc.*, 599 F.3d 102, 113-14 (2d Cir. 2010).

Plaintiff has requested that rather than outright dismissal, the court transfer the case so that Plaintiff will not face a statute of limitations issue if he must file his suit elsewhere. Defendant consents to transfer. As the witnesses to the accident, the location of the scene, some of the treating physicians, the availability of compulsory process, and the likely application of Texas law all favor transfer, the court hereby GRANTS Plaintiff's request.

---

[6] The Second Circuit has articulated the relevant factors as follows: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *N.Y. Marine & Gen. Ins. Co. v. Lafarge N.A., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (internal quotation marks omitted).

## CONCLUSION

For the foregoing reasons, the court TRANSFERS this matter to the United States District Court for the Northern District of Texas, Amarillo Division and upon transfer, will dismiss this case without prejudice pursuant to Defendant's motion (Doc. 3).
SO ORDERED.

Dated at Burlington, in the District of Vermont, this 20th day of September, 2018.

Christina Reiss, District Judge
United States District Court